ANDREW J. NICHOLS v. FRANK S. NICHOLS, LOTTIE E.
    . KEENEY, SYLVESTER R. NICHOLS, AND LULU
                    A. NICHOLS.

| 94 | 569 |
| 152 | 430 |

*Deed—Fraud—Delivery—Life-lease.*

1. Deeds executed by a father to his children, and a lease of a
   life-estate in the land executed by them to him as a part of
   the same transaction, will be construed as one instrument, and
   the estate conveyed to the children held to be subject to the
   life-estate reserved to the father.
2. The complainant is held not to have made out his case by a
   preponderance of the proofs, namely, that he was induced
   by fraud to sign the deeds sought to be set aside, and that
   they were never delivered with intent to have them take effect,
   but were left in the hands of his attorney, to be recorded
   in case judgment should pass against him in one or both of
   certain pending suits.

Appeal from Monroe.    (Kinne, J.)    Argued January 10
and 11, 1893.    Decided February 10, 1893.

Bill to set aside certain deeds.    Complainant appeals.
Decree affirmed.    The facts are stated in the opinion.

*O. A. Critchett* and *Landon & Lockwood,* for complainant.

*E. R. Gilday* (*I. R. Grosvenor,* of counsel), for de-
fendants.

MONTGOMERY, J.    The bill in this case is filed to set
aside certain deeds made by complainant to his children.

It appears that two suits had been brought against com-
plainant by a Mrs. Vincent,—one for breach of promise to
marry, and the other for slander.    On the day before that
on which the trial of the first-mentioned case was expected
to occur, complainant and his two daughters appeared at
the office of Col. Grosvenor, who was acting as attorney

for complainant in the two suits referred to.    They came
to consult with Col. Grosvenor with reference to their tes-
timony to be given on the trial, which was expected to
occur the following day.    It was on the occasion of this
visit that the deeds in question were prepared, and at the
same time a life-lease of the same property to complainant
was prepared, and signed by the two daughters, who were
present, and prepared for the signatures of the two sons,
which were thereafter affixed.

Two grounds for equitable relief are urged:

1. That the complainant was induced to sign the deeds
by fraud.

2. That the deeds were never delivered with intent to
have them take effect, but that the delivery was conditional
only, and that the deeds were left in the hands of Col.
Grosvenor, to be placed of record in case judgment should
be obtained against complainant in one or both of the
suits then pending.

1. The alleged fraud is supported only by the testimony of
complainant, which is contradicted by two of the defendants,
who were present, and by Col. Grosvenor and Mr. E. R.
Gilday, who was called in to do the writing.    The com-
plainant's version of what took place is as follows:

"He [referring to Col. Grosvenor] said to the girls,
'That woman is after the farm; she has her eye on that
farm, and she is going to have it; that is what she is
after.' My daughter spoke and said, 'Colonel, isn't there
any way that father can fix his property so as to keep it
out of Julia's hands?'

"Q. Which girl said that?

"A. Mrs. Keeney. 'Why, certainly there is,' he says.
She says, 'How?' 'Why, he can deed it to you children.'
Mrs. Keeney spoke up and said, 'Pa, what do you say to
that?' I thought a minute, and said, 'I do not think
that is necessary.' 'Well, you don't want her to have the
farm, do you?' 'Why, no; and I don't see how she is
going to get it.  I have done nothing that she is going
to get it for.' 'Well, that is the best way.' 'Well, if it
must be done,' says I, 'I will deed it to my sister.' Mrs.

Keeney said, 'Are not Aunt Mary's affairs in bad shape?' Says I, 'I don't know that they are, but, if you think they are, I will deed it to Frank, my oldest son.' The colonel says, 'Now, you just deed that over to your children; divide the property up, and deed it over to them, and I will hold the papers; and if the case is settled, or no judgment is obtained, I will pass the papers back to you.' I consented; thought there was no trouble about the settlement, and of course the papers would be passed back to me."

He further said that he did not hear the deeds read, and, when asked why he did not, he answered:

"Well, the first reason was I was a little hard of hearing, and I was sitting on the back side of the room, and I was thinking I had got into the lion's mouth, and I felt just as though I did not care much what went on, and I did not pay any attention. I could hear once in a while what they were reading. I knew they were reading the deeds, but I could not tell what, and after they got them made out they asked me to sign them. I went up and signed them."

The testimony of the two daughters and of Col. Grosvenor and Mr. Gilday shows that, after some discussion about deeding the property to his sister or to his son Frank, it was decided to deed it to his children in certain proportions; that complainant said that he had for some time contemplated making such a disposition of his property; that the deeds were prepared under his direction; that he then, in form, delivered the ones running to his daughters; that they executed a life-lease to him in return; and that, after some discussion, it was decided to withhold the deeds from record for the time being, for the reason that it was thought, if the deeds were recorded, the fact of their execution might be taken as evidence against complainant in the two suits referred to. Subsequently the two sons came to Monroe with their father, and their testimony shows the delivery of the two deeds to them, and that they at the same time executed the lease to the com-

plainant; and this testimony is corroborated by the testimony of Grosvenor and Gilday. We are fully convinced that there was no fraud practiced upon the complainant; that whatever he did he did with his eyes open, and, whatever may be thought of the attempt to place the property beyond the reach of Mrs. Vincent, the complainant is not in a position to assert the invalidity of the deed upon this ground.

2. The question of whether the deeds were delivered with intent that they should have present effect is not left free from doubt by the proofs, but a careful examination of the testimony leads us to the conclusion that the complainant must have understood that the deeds would take effect from their date. The fact that the deeds were formally delivered, two of them on the day of their signing, and the other two at a later day; the fact that complainant was at pains to figure out the proportions in which he desired to have his property given to his children; the fact that he stated that he had before contemplated making such a disposition of his property; the fact that complainant was told by Mr. Gilday that the disposition which he was then making was final,—all support the contention of the defendants, and lead to the conclusion that the complainant, while understanding the import and effect of the transaction at the time, seeks now to avoid his contract because of the changed relations between himself and Mrs. Vincent. The case is one in which the conclusion of the learned circuit judge, who saw the witnesses and heard their testimony, is entitled to weight; and while, as stated, the case is not free from doubt, yet we feel well satisfied from our independent examination of the testimony that the complainant has not made out the case stated in his bill by a preponderance of the proofs.

It is contended that the lease which was prepared, and

signed by one of the daughters, who is a minor, is for this reason subject to revocation by her; and that the instrument, as a whole, is of doubtful validity, in view of article 18, § 12, of the State Constitution, which provides that "no lease or grant hereafter of agricultural land for a longer period than 12 years, reserving any rent or service of any kind, shall be valid." We think it is clear, however, that the deeds and the lease must be taken and construed as one instrument, and that the estate which was conveyed by the deeds is subject to the reservation contained in the instrument. If desired, the decree may embody this as a determination of the Court in . this proceeding. In other respects the decree will stand affirmed, with costs.

HOOKER, C. J., McGRATH and GRANT, JJ., concurred. LONG, J., took no part in the decision.